IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-00107-MR-WCM

GERALD R. LASCHOBER      )
                                 )
       Plaintiff,       )
                                 )        MEMORANDUM AND
v.                        )        RECOMMENDATION
                                 )
AARON C. AMMONS,      )
JOSHUA FREEMAN       )
                                 )
       Defendants.    )
_____ )

This matter is before the Court on Defendant Aaron Ammons' Motion to Dismiss (Doc. 2), and Defendant Joshua Freeman's Motion to Dismiss (Doc. 6). Both Motions have been referred to the undersigned pursuant to 28 U.S.C. §636 for the entry of a recommendation.

## I.    Procedural Background

On March 16, 2021, Plaintiff, proceeding *pro se*, filed a complaint in the District Court of Swain County against Defendants Aaron C. Ammons ("Ammons") and Joshua Freeman ("Freeman"). Doc. 1-1 at 3-6. The case was subsequently removed to this Court on April 16, 2021. Doc. 1.[1]

---

[1] Plaintiff previously filed suit against Ammons and Freeman on March 16, 2020 and thereafter filed a Notice of Voluntary Dismissal Without Prejudice. See Docs. 6-1 & 6-3.

1

On April 21, 2021, Ammons filed his Motion to Dismiss along with a supporting memorandum ("Ammons' Motion to Dismiss," Docs. 2, 3).

On May 20, 2021, Freeman filed his Motion to Dismiss along with a supporting memorandum ("Freeman's Motion to Dismiss," Docs. 6, 7).

Both Motions have been fully briefed. See Docs. 9, 10, 12, 14 (relative to Ammons' Motion to Dismiss); Docs. 11, 13 (relative to Freeman's Motion to Dismiss).[2]

Although Freeman initially argued that Plaintiff's claims against him should be dismissed due to insufficient service of process, Freeman later withdrew his Motion on that basis, and has adopted most of the arguments in Ammons' Motion to Dismiss. See Doc. 13.

## II. Materials Considered

In responding to the Motions, Plaintiff has submitted numerous documents and has made various factual statements beyond those in his Complaint. Defendants have also submitted other documents in support of their Motions to Dismiss.

---

[2] Some of Plaintiff's filings are essentially sur-replies, which are not allowed under the Local Rules of this district without leave of court. However, in light of Plaintiff's *pro se* status, the undersigned has considered all of Plaintiff's filings. Plaintiff should note, though, that if this matter proceeds, he should familiarize himself with the Local Rules, which are available on the court's website, and should endeavor to follow those rules as well as the Federal Rules of Civil Procedure when making future filings.

To the extent the parties' additional documents constitute official public records, are central to Plaintiff's claims, are sufficiently referred to by Plaintiff's Complaint, and/or are not challenged on authenticity grounds, they may be considered at this stage of the proceedings. See Witthohn v. Fed. Ins. Co., 164 Fed. Appx. 395, 396 (4th Cir. 2006) ("a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed"); Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) ("Although as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage, we have held that when a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.")(internal quotation marks omitted)(alterations in original).

III.  **Factual Background**

Plaintiff's Complaint and the other items of record appropriately considered indicate that Plaintiff's claims stem from a March 17, 2017 motor vehicle stop involving Ammons, a North Carolina State Trooper, and Freeman, a Bryson City Police Officer, and the related issuance of a North Carolina Uniform Citation (the "Citation").

The "Officer Comments" section of the Citation reads:

3

Checkpoint on Walker Woody Rd. Myself [Ammons] and Officer Freeman were conducting. [Plaintiff] was driving a dark gray Honda Accord and was in line coming from the US 19 direction. He was about 3 cars back, both officers were wearing reflective vests, [Plaintiff] proceeded to make a 3 pt turn and drive away from the checkpoint. Officer Freeman ran after on foot, he stopped for a sec when Freeman yelled to stop. I heard him yell "no" and took off.

Doc. 3-1.

Plaintiff alleges that Ammons pursued Plaintiff, displayed his lights and sirens, and directed Plaintiff to pull his vehicle over into a parking lot and to stop. Doc. 1-1 at ¶6. Ammons then approached Plaintiff and, "suddenly and without warning, reason, provocation or justification," attacked Plaintiff by grabbing and twisting his right arm. Id. Additionally, Plaintiff alleges that Freeman arrived on the scene and attacked Plaintiff and that both Ammons and Freeman assaulted Plaintiff and put him in handcuffs. Id.[3]

Plaintiff appears to acknowledge that Ammons presented Plaintiff with the Citation at the scene of the incident. Doc. 12 at 2, 7. The Citation indicates that Plaintiff was charged with 1) failing, upon the approach of a state highway

---

[3] Plaintiff alleges that as result of this attack, he suffered bodily injuries which caused him pain and suffering and limited his ability to work and engage in regular activities. He also alleges that his injuries required medical treatment and that he continues to suffer emotional distress. Id. at ¶¶ 7-9. Plaintiff has submitted a clinical report from the Swain County Hospital Emergency Department which indicates that he was diagnosed with a traumatic right rotator cuff strain and incomplete tear on March 19, 2017. Doc. 9-4 at 2.

patrol vehicle that was giving a warning signal by appropriate lights and sirens, audible under normal circumstances, to stop his vehicle in violation of N.C.G.S. §20-157(A) ("Failure to Heed"), and 2) resisting, delaying, and obstructing a public officer by failing to stop at a driver's license checkpoint and produce a driver's license, in violation of N.C.G.S. §14-223 ("Resisting Public Officer").

Plaintiff's case appeared on multiple calendars in State District Court, including July 25, 2018 and October 31, 2018. See Doc. 9-1.

What transpired on or about July 25, 2018 is in dispute. Notations on the bottom of the Citation indicate that Plaintiff pled guilty to the Failure to Heed charge. Doc. 3-1. Plaintiff, however, disagrees and contends that he did not enter a guilty plea of any kind. See Doc. 9 at 2.

Plaintiff's case was last before the State District Court on October 31, 2018. A judgment signed by a State District Court Judge on that date indicates that Plaintiff was found guilty of the Failure to Heed charge pursuant to a plea, and that Plaintiff gave notice of appeal from the judgment of the District Court to the Superior Court. Doc. 3-2 at 1-2. While Plaintiff denies pleading guilty to either of the charges, he appears to acknowledge that he intended to give notice of appeal to the Superior Court. Doc. 9 at 2.

A jury trial was scheduled to begin in Superior Court on February 11, 2019. Doc. 9 at 3. In anticipation of that trial, Plaintiff (who was by then acting

through counsel) issued a subpoena for Ammons' dashboard and body camera recordings. That information was to be delivered to Plaintiff's attorney by January 10, however Plaintiff contends that the recordings were not delivered and that they would have been exculpatory for him. Doc. 9 at 3.

Subsequently, on January 16, 2019, the Failure to Heed and Resisting Public Officer charges were dismissed. The dismissal document states that the basis for the dismissal was that the officer who had "the initial contact with [Plaintiff] no longer works for law enforcement." Doc. 3-3.[4]

Plaintiff appears to take issue with the way in which the dismissal was entered and alleges that the charges were subsequently "resolved in the Plaintiff's favor through dismissal by the court." Doc. 1-1 at ¶11.

## IV. Legal Standard

In a motion made pursuant to Rule 12(b)(6), the central issue is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In that context, the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 192.

The court, however, is not required to accept "legal conclusions, elements

---

[4] Plaintiff also states that Freeman was "forced to resign from the Bryson City Police Department early April of 2018." Doc. 9 at 4.

of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

Finally, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal citation omitted). At the same time, the court cannot ignore a clear failure to allege facts which set forth a cognizable claim and does not act as a *pro se* plaintiff's advocate or develop claims that a plaintiff fails to raise. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such *pro se* complaints does not transform the court

into an advocate. Only those questions which are squarely presented to a court may properly be addressed"); <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1152 (4th Cir. 1978) (district courts are not expected to assume the role of advocate for the *pro se* plaintiff).

## V. Discussion

### A. Plaintiff's Claims

Plaintiff alleges that Defendants deprived him "of his right to be free from unwarranted and unreasonable attack, detention and seizures, as guaranteed by the Fourteenth Amendment to the United States Constitution, deprived plaintiff of his due process rights as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States, deprived him of his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and deprived the plaintiff of his right to liberty under the Fourteenth Amendment to the Constitution of the United States," all in violation of 42 U.S.C. §1983. Doc. 1-1 at ¶¶ 15-16.

Additionally, Plaintiff alleges that Ammons and Freeman "conspired together…for the purpose of depriving the Plaintiff of the equal protection of the laws and depriving plaintiff of his privileges and immunities under the law" in violation of 42 U.S.C. §1985.

Finally, Plaintiff contends that Ammons and Freeman "committed an assault and battery" upon him. Doc. 1-1 at ¶18.[5]

## B. §1983 Claims

The Federal Civil Rights Act, 42 U.S.C. §1983, imposes civil liability upon a person who, under color of law, deprives another of rights secured by the Constitution or laws of the United States. 42 U.S.C. §1983. To prevail on a §1983 claim, the plaintiff has the burden of establishing 1) the deprivation of a right secured by the Constitution or laws of the United States, and 2) that the alleged deprivation was committed under color of state law. Austin v. Paramount Parks, Inc., 195 F.3d 715, 727 (4th Cir. 1999).

Here, Ammons argues that any official capacity claim asserted against him should be dismissed because he is not a "person" under §1983, and that, with respect to any individual capacity claim, he is entitled to qualified immunity. Additionally, Ammons asserts that Plaintiff cannot establish that his constitutional rights were violated.

---

[5] Ammons interprets Plaintiff's Complaint as pleading the following claims: (1) a §1983 claim for violations of his Fourth Amendment rights against unreasonable seizure; (2) a §1983 claim for violations of his Fifth and Fourteenth Amendment rights to due process; (3) a §1983 claim for violations of his Fourteenth Amendment rights to liberty; (4) a §1983 claim for violations of his Eighth Amendment rights against cruel and unusual punishment; (5) a claim for conspiracy to violate Plaintiff's civil rights under 42 U.S.C. §1985; (6) common law assault and battery; and (7) common law malicious prosecution. Doc 3 at 5. Neither Defendant Freeman nor Plaintiff have disagreed with Ammons' interpretation of Plaintiff's claims. The undersigned, though, construes Plaintiff's claims slightly differently, as described further below.

1.      **Official Versus Individual Capacity Claims**

Ammons argues that Plaintiff has sued Defendants in their official capacities for all claims, except the assault and battery claims. Doc. 3 at 7. Plaintiff does not directly address this issue in his filings. See McKelvey v. W. Reg'l Jail, No. CV 3:13-22206, 2016 WL 1090619, at *2 (S.D.W. Va. Mar. 21, 2016) ("The defendants' personal or official character determines a number of matters in an action, including the relief obtainable and defenses available. As such, the capacity of defendants is no trivial matter, and defendants are entitled to notice of the capacity in which they must defend themselves").

The undersigned has applied a "holistic" approach in reviewing the Complaint to determine whether Plaintiff has asserted claims against Ammons and Freeman in their official or individual capacities. See Kitchen v. Barton, No. 1:14-CV-00122-MR-DLH, 2015 WL 5567556, at *10 (W.D.N.C. Sept. 22, 2015) (citing Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995) ("Throughout, the underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly")).

The caption of Plaintiff's Complaint is silent as to whether Ammons and Freeman are being sued in their official or individual capacities. In the body of his Complaint, Plaintiff alleges that Defendants acted "in their official capacities…as agents of the State of North Carolina and Bryson City, North Carolina." Doc. 1-1 at ¶14. Plaintiff also alleges that each Defendant was acting

"either in his capacity" as a Trooper or Police Officer "or outside the scope of his lawful authority." Doc. 1-1 at ¶¶ 2 & 3. Additionally, Plaintiff seeks both compensatory and punitive damages. Doc. 1-1 at 6. <u>See</u> <u>Biggs</u>, 66 F.3d at 61 ("Another indication that suit has been brought against a state actor personally may be a plaintiff's request for compensatory or punitive damages, since such relief is unavailable in official capacity suits").

While Plaintiff's Complaint could be much clearer in this regard, the undersigned concludes that Plaintiff has attempted to assert §1983 claims against Defendants in both their official and individual capacities.

## 2. Official Capacity Claims

Plaintiff's §1983 claims for monetary damages against Ammons in his official capacity are tantamount to claims asserted against the State of North Carolina. <u>See</u> <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989); <u>Ballenger v. Owens</u>, 352 F.3d 842, 844-5 (4th Cir. 2003).

However, the State is not a "person" within the meaning of §1983 and therefore Plaintiff cannot maintain this claim against Ammons. <u>Will</u>, 491 U.S. at 64-66, 109 S. Ct. at 2309; <u>see also</u> <u>Manning v. S.C. Dep't of Highway and Public Transp.</u>, 914 F.2d 44, 48 (4th Cir. 1990); <u>Kling v. Harris Teeter Inc.</u>, 338 F. Supp. 2d 667, 675 (W.D.N.C. 2002), aff'd, 86 Fed. Appx 662 (4th Cir. 2004); <u>Oliver v. Baity</u>, 208 F.Supp.3d 681, 694 (M.D.N.C. 2016) (because [defendant], a North Carolina Highway Trooper, is a state actor, Plaintiff's official capacity

claims are, in effect, claims against the State which is not a 'person' under §1983"); accord Dove for Estate of Dove v. Stevens, No. 5:05-cv-33-BO, 2006 WL 8438680, at *3 (E.D.N.C. Oct. 23, 2006) (finding the Highway Patrol to be the equivalent of the state of North Carolina for purposes of Eleventh Amendment analysis).

With respect Plaintiff's §1983 claims for monetary damages against Freeman in his official capacity, such claims are equivalent to claims against Bryson City. See Harrison v. Chalmers, 551 F.Supp.2d 432, 437 (M.D.N.C. 2008) ("a suit against a governmental officer in his official capacity is the same, for purposes of recovery, as a suit against the governmental entity itself"); Moore v. City of Creedmoor, 345 N.C. 356, 367 (1997) (holding that claim against police chief acting in his official capacity was redundant where city had been named as defendant).

Freeman does not argue that he is not a "person" for purposes of a §1983 official capacity claim. See Oliver, 208 F.Supp.3d at 688 ("The Supreme Court has held that municipalities and other local governments are included among those 'persons' to whom § 1983 applies") (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

Therefore, the undersigned will recommend that Plaintiff's §1983 claims against Ammons in his official capacity be dismissed.

12

### 3.     Individual Capacity Claims

All of Plaintiff's §1983 claims appear to arise under the Fourth Amendment. <u>See</u> <u>Wallace v. Kato</u>, 549 U.S. 384, 387-88, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (acknowledging that "Section 1983 provides a federal cause of action" for Fourth Amendment false arrest, and stating that "[f]alse arrest and false imprisonment overlap; the former is a species of the latter"); <u>Lambert v. Williams</u>, 223 F.3d 257, 261 (4th Cir. 2000) (a "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort"); <u>Brooks v. City of Winston-Salem, N.C.</u>, 85 F.3d 178, 184 (4th Cir. 1996) ("[T]he Fourth Amendment provides all of the pretrial process that is constitutionally due to a criminal defendant in order to detain him prior to trial"); <u>Kitchen v. Miller</u>, No. 1:14-CV-00122-MR-DLH, 2016 WL 7478982, at *7 (W.D.N.C. Dec. 29, 2016) ("Excessive force claims in the context of an arrest are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard") (citing <u>Graham v. Connor</u>, 490 U.S. 386, 394 (U.S. 1989)).

### a.  Unreasonable Seizure Claims

"The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and the seizure of an individual effected without probable cause is unreasonable." <u>Brooks v. City of Winston-Salem</u>, 85

F.3d at 183 (citing Graham v. Connor, 490 U.S. 386, 396-97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Here, it appears that Plaintiff asserts §1983 claims based on his contention that he was falsely arrested and maliciously prosecuted.

"To succeed on an action for false arrest [pursuant to 42 U.S.C. §1983], [Plaintiff] must demonstrate that his arrest was not supported by probable cause." North Carolina v. McCurry, 175 F.3d 1016 (table), 1999 WL 152622 *1 (4th Cir.1999) (citing Street v. Surdyka, 492 F.2d 368, 372–73 (4th Cir. 1974)). Probable cause exists if, at the time of the arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); see Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959) (only facts and circumstances known at time of arrest may be used to support a finding of probable cause). A totality of the circumstances test is employed to determine probable cause. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

With respect to Plaintiff's Fourth Amendment claim for malicious prosecution, Plaintiff must show "the initiation or maintenance of a proceeding against the plaintiff by the defendant was without probable cause to support

it and a termination thereof occurred in favor of the plaintiff." <u>Wilkerson v.</u> <u>Hester</u>, 114 F.Supp.2d 446, 451 (citing <u>Lambert v. Williams</u>, 223 F.3d 257, 259 (4th Cir. 2000)).

Therefore, the absence of probable cause is required for all of Plaintiff's §1983 claims for unreasonable seizure.

The Fourth Circuit has explained that flight or other evasive behavior in response to a police checkpoint or roadblock "may contribute to reasonable suspicion that the driver is engaged in criminal activity." <u>U.S. v. Smith</u>, 396 F.3d 579, 584 (4th Cir. 2005) ("we have repeatedly recognized that evasive reactions to the presence of police may be considered in determining whether reasonable suspicion exists for an investigatory stop") (collecting cases). Further, flight from an officer after being told to stop may, in certain circumstances, constitute probable cause sufficient to support an arrest. <u>See</u> <u>U.S. v. Goss</u>, 537 Fed. Appx. 276, 280 (4th Cir. 2013); <u>Virginia v. Moore</u>, 553 U.S. 164, 171 (2008) (holding "when an officer has probable cause to believe a person committed even a minor crime in his presence ... [t]he arrest is constitutionally reasonable").

Here, Plaintiff does not appear to contest that Defendants were conducting a checkpoint, and that Plaintiff made a "three-point turn" away from that checkpoint prior to the traffic stop. Instead, Plaintiff contests the legality of the checkpoint itself, arguing that it did not comply with North

Carolina statutory requirements and was otherwise invalid. <u>See</u> Doc. 9 at 5-6; Doc. 14 at 1-2. Additionally, Plaintiff argues that, "when approached by 'light and siren,'" he stopped in approximately thirty seconds. Doc. 9 at 7. Finally, and as noted above, Plaintiff disputes that he pled guilty to any charge referenced in the Citation.

Given the factual disputes with respect to the circumstances surrounding Plaintiff's arrest and considering Plaintiff's allegations in the light most favorable to him, the undersigned will recommend that Plaintiff's §1983 claims based on unreasonable seizure be allowed to proceed so that the factual record can be developed more fully.

### b. Excessive Force Claim

"Under the fourth amendment, objective reasonableness provides the standard for use of force in effectuating an arrest." <u>Wilkerson</u>, 114 F.Supp.2d at 462 (citing <u>Graham v. Connor</u>, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); <u>Tennessee v. Garner</u>, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); <u>Martin v. Gentile</u>, 849 F.2d 863 (4th Cir.1988)). The "objective reasonableness test" requires careful attention to the circumstances of the particular case, including the severity of the crime, whether the suspect poses an immediate threat to the safety of officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. <u>Graham</u>, 490 U.S. at 396.

Here, Plaintiff alleges that Ammons "grabb[ed] and twist[ed] Plaintiff's right arm" and that Freeman "attacked" him. Doc. 1-1 at ¶6. Plaintiff further alleges that he received medical treatment for his injuries and suffered "great pain." Doc. 1-1 at ¶8. Plaintiff contends that Ammons acted "suddenly and without warning, reason, provocation or justification." Id. Finally, in his briefing, Plaintiff contends that the day after the incident, he went to the "emergency doctor" and "was diagnosed with a partial tear to his right shoulder's rotator cuff." Doc. 12 at 3.

Plaintiff's allegations are relatively sparse. However, considering those allegations in the light most favorable to him, the undersigned will also recommend that Plaintiff's §1983 claim based on excessive force be allowed to proceed to allow for further development of the factual record. See Kukla v. Hulm, 310 F.3d 1046, 1050 (8th Cir. 2002) (whether police used excessive force was issue for jury where handcuffs were so tight that plaintiff sprained his wrist, shoulder, and elbow, where plaintiff had committed no offense, he posed no safety threat, and made no show of resistance); Mickle v. Morin, 297 F.3d 114, 121–22 (2d Cir. 2002) (holding that rational juror could find use of force excessive where handcuffing caused bruising and dislocated rotator cuff and plaintiff's only offense was making nonemergency calls to 911).

### c. Qualified Immunity

While the issue of qualified immunity should be addressed at the earliest stage possible, it can be difficult to determine a defendant's entitlement to qualified immunity at the pleading stage. See Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citation omitted); Poole v. County, No. 3:15-cv-00309-FDW-DCK, 2016 WL 4267792, at *3 (W.D.N.C. Aug. 11, 2016).

Here, given the factual disputes discussed above, the undersigned is not persuaded that, as a matter of law, Defendants are entitled to qualified immunity. See Hyatt, et al. v. Miller, et al., No. 1:19-cv-00250-MR-WCM, 2021 WL 535856, at *9 (W.D.N.C. Feb. 12, 2021) ("It is clearly established under the Fourth Amendment that individuals have the right to be free from unlawful seizures of their persons, including traffic stops that are not justified by probable cause or reasonable suspicion. Accordingly, Defendant Lambert will not be entitled to qualified immunity if he initiated the traffic stop without probable cause or reasonable suspicion") (citing Hicks v. Ferreyra, 965 F.3d 302, 307 (4th Cir. 2020)); Wilkerson v. Thrift, 124 F.Supp.2d 322 (W.D.N.C. 2000) (motion to dismiss denied without prejudice as to the officer's claim of qualified immunity with respect to excessive force claim).

The undersigned will therefore recommend that Defendants' request for dismissal on the ground of qualified immunity be denied at this time, without

prejudice to the renewal of such a request at a later stage of the proceedings, if appropriate.

## C. §1985 Claim

The Fourth Circuit has explained that "to establish a sufficient cause of action for "conspiracy to deny equal protection of the laws" under §1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995) (citing Buschi v. Kirven, 775 F.2d 1240, 1257 (4th Cir.1985); Griffin v. Breckenridge, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971)); see also Bhattacharya v. Murray, 515 F. Supp. 3d 436, 463 (W.D. Va. 2021). Courts "have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." A Soc'y Without A Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Simmons, 47 F.3d at 1376)); see also Womack v. Paragon Systems, No. 3:17-cv-00667-FDW, 2018 WL 2418557, at *4 (W.D.N.C. May 29, 2018) ("Allegations of 'parallel conduct and a bare assertion of a conspiracy' are not enough for a claim to proceed").

19

Here, Plaintiff has made only conclusory allegations regarding a purported conspiracy and has not made any allegation regarding discriminatory animus.

The undersigned will therefore recommend that Plaintiff's §1985 claim be dismissed.

### D. State Law Claims for Assault and Battery

To the extent Plaintiff's assault and battery claims are brought against Ammons in his official capacity, Ammons argues that they are barred by sovereign immunity. To the extent such claims are brought against Ammons in his individual capacity, Ammons argues that they are barred by public official immunity.

### 1. Official Capacity Claims

"[S]uits against public officials are barred by the doctrine of governmental immunity where the official is performing a governmental function, such as providing police services." Parker v. Hyatt, 196 N.C.App. 489, 493, 675 S.E.2d 109, 111 (2009) (citation omitted); see also Moore v. Evans, 124 N.C.App. 35, 41, 476 S.E.2d 415, 421 (1996) ("Police officers, as public officers, share in the immunity of their governing municipalities").

Such immunity, however, may be waived in certain circumstances. See English Construction Co. Inc. v. City of Charlotte, No. 3:20-CV-00346-RJC-

DSC, 2020 WL 8831579, at *2 (W.D.N.C. Oct. 27, 2020) (discussing waivers of governmental immunity).

An allegation of waiver must be made specifically in the complaint. <u>See</u> <u>Phillips v. Gray</u>, 163 N.C.App. 52, 56, 592 S.E.2d 229, 232 (2004) (citing <u>Clark v. Burke County</u>, 117 N.C.App. 85, 88, 450 S.E.2d 747, 748 (1994)). "Absent such an allegation, the complaint fails to state a cause of action." <u>Id</u>.

Here, Plaintiff has alleged that Defendants "have waived sovereign or governmental immunity through the purchase of one or more policies of liability insurance…purchasing a commercial bond… [and/or] participating in a local government risk pool…." Doc. 1-1 at ¶4.

With respect to Plaintiff's claims against Freeman, who is alleged to be a Bryson City Police Officer, the purchase of liability insurance may serve as a waiver of governmental immunity "at least to the extent of coverage purchased…." <u>Moore</u>, 124 N.C.App. at 41 ("defendant Evans is not entitled to the defense of governmental immunity because defendant City has waived its sovereign immunity by purchasing liability insurance"); <u>see also</u> N.C.G.S.A. §160A-485(a) ("Immunity shall be waived only to the extent that the city is indemnified by the insurance contract from tort liability. No formal action other than the purchase of liability insurance shall be required to waive tort immunity, and no city shall be deemed to have waived its tort immunity by any action other than the purchase of liability insurance"); <u>Oliver</u>, 208

F.Supp.3d at 692 (explaining that the North Carolina Tort Claims Act "does not apply to county agencies nor to local government entities").

With respect to Plaintiff's claims against Ammons, who is alleged to be a North Carolina State Trooper, "[w]hile a state agency may purchase liability insurance, pursuant to N.C. Gen. Stat. § 58-32-15(c), this statute specifically provides that purchase of this insurance does not amount to a waiver of the defense of sovereign immunity." Walton v. North Carolina Dept. of Agriculture, No. 5:09-CV-302-FL, 2010 WL 11482933, at *3 (E.D.N.C. Feb. 17, 2010) (citing Wood v. N.C. State Univ., 147 N.C. App. 336, 343, 556 S.E.2d 38, 43 (2001) (holding, as a matter of first impression, that the purchase of liability insurance does not waive a state entity's sovereign immunity beyond the waiver established in the Tort Claims Act)); Kawai America Corp. v. University of North Carolina at Chapel Hill, 152 N.C.App. 163, 167, 567 S.E.2d 215, 218 (2002); Oliver, 208 F.Supp.3d at 698 (explaining that the North Carolina Tort Claims Act waives the state's sovereign immunity only for the negligent acts of its officers and employees); Dove for Estate of Dove, 2006 WL 8438680, at *4, n. 5 ("Though North Carolina's State Tort Claims Act has waived sovereign immunity as against negligence claims brought within the North Carolina Industrial Commission, that immunity has been preserved as against negligence and intentional tort claims brought outside that venue").

Accordingly, Plaintiff's alleged waiver of sovereign immunity with respect to his assault and battery claims against Ammons in his official capacity is not effective, and the undersigned will recommend that such claims be dismissed.

## 2.     Individual Capacity Claims

In North Carolina, police officers are "public officials," and an officer is "[generally] immune from personal liability for mere negligence in the performance of his duties, but he is not shielded from liability if his alleged actions were corrupt or malicious or if he acted outside and beyond the scope of his duties." Schlossberg v. Goins, 141 N.C.App. 436, 445, 540 S.E.2d 49, 56 (2000) (citation omitted); see also Lopp v. Anderson, 251 N.C. App. 161, 168, 795 S.E.2d 770, 776 (2016) ("Police officers engaged in performing their duties are public officials for the purposes of public official immunity").

"[A] public official is immune from suit unless the challenged action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt." Hyatt, 2021 WL 535856, at *10. "[A] malicious act is an act (1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another." Id. at 11 (citing Wilcox v. City of Asheville, 222 N.C. App. 285, 289, 730 S.E.2d 226, 230 (2012)). An "officer who seizes an individual without probable cause or reasonable suspicion acts contrary to duty." Id. (citing State v. Milien, 144

N.C. App. 335, 339, 548 S.E.2d 768, 771 (2001); <u>Brown v. Town of Chapel Hill</u>, 233 N.C. App. 257, 265, 756 S.E.2d 749, 755 (2014)).

Here, as discussed above, the parties dispute whether Plaintiff was seized without probable cause. Accordingly, the current record does not allow for a finding that Defendants are entitled to public official immunity.[6]

## VI.   Recommendation

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

(1) Defendant Aaron Ammons' Motion to Dismiss (Doc. 2) be:

    a. **GRANTED IN PART**, and that the following claims against Ammons be dismissed: (1) §1983 claims against Ammons in his official capacity; (2) §1985 claim; and (3) assault and battery claims against Ammons in his official capacity; and

    b. **DENIED IN PART**, and that the following claims against Ammons proceed: (1) §1983 claims against Ammons in his

---

[6] North Carolina courts are split on whether public official immunity bars all intentional tort claims. <u>See</u> <u>White v. City of Greensboro</u>, ---F.Supp.3d---, 2021 WL 1258402, at *36 (M.D.N.C. April 5, 2021) (citing <u>Maney v. Fealy</u>, 69 F. Supp. 3d 553, 564-65 (M.D.N.C. 2014); <u>see also Hyatt</u>, 2021 WL 535856 at *12, n. 8 (explaining that the Fourth Circuit has noted North Carolina courts are split on whether public official immunity can apply to intentional tort claims like an assault claim but that it was unnecessary to "resolve this issue at this time" because the Court found public official immunity did not apply based on genuine issues of material fact, including whether defendant had probable cause to initiate a traffic stop).

individual capacity; and (2) assault and battery claims against Ammons in his individual capacity.

(2) Defendant Joshua Freeman's Motion to Dismiss (Doc. 6) be:

    a. **GRANTED IN PART**, and that the §1985 claim against Freeman be dismissed; and

    b. **DENIED IN PART**, and that the following claims against Freeman be allowed to proceed: (1) §1983 claims against Freeman in his official capacity; (2) §1983 claims against Freeman in his individual capacity; (3) assault and battery claims against Freeman in his official capacity; and (4) assault and battery claims against Freeman in his individual capacity.

Signed: October 29, 2021

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).