IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:21-cv-00107-MR-WCM

| | |
|---|---|
| GERALD R. LASCHOBER, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> AARON C. AMMONS ) <br> and JOSHUA FREEMAN, ) <br> ) <br> Defendants. ) <br> _____ ) | **MEMORANDUM OF <br> DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Defendant Aaron C. Ammons' Motion for Summary Judgment [Doc. 51].

**I.    PROCEDURAL BACKGROUND**

On March 16, 2021, the Plaintiff Gerald R. Laschober ("Plaintiff") filed this action in Swain County Superior Court against Defendants Aaron C. Ammons and Joshua Freeman. [Doc. 1]. On April 16, 2021, the Defendants filed a Notice of Removal with this Court based on federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441(a). [Id.]. This action arises out of an incident that occurred on March 17, 2017, in Bryson City, North Carolina, that ultimately led to the Plaintiff's arrest. [Id.]. The Plaintiff alleges

several constitutional violations under 42 U.S.C. § 1983, specifically that the Defendants deprived him

> of his right to be free from unwarranted and unreasonable attack, detention and seizures, as guaranteed by the Fourteenth Amendment to the United States Constitution, deprived plaintiff of his due process rights as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States, deprived him of his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and deprived the plaintiff of his right to liberty under the Fourteenth Amendment to the Constitution of the United States.

[Doc. 1-1 at 5]. The Plaintiff also alleges that the Defendants conspired together for the purpose of depriving the Plaintiff of his civil rights in violation of 42 U.S.C. § 1985. [Id.]. Finally, the Plaintiff alleges that the Defendants committed an assault and battery upon him. [Id. at 6].

On March 18, 2022, this Court granted in part the Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). [Doc. 19]. On October 30, 2023, the Plaintiff filed a notice of settlement of all claims with Defendant Freeman. [Doc. 64]. Therefore, the only remaining claims are those against Defendant Ammons: (1) claims under 42 U.S.C. § 1983 for the violation of his Fourth Amendment rights to be free from unreasonable seizure and excessive force in his individual capacity, and (2) state law claims of assault and battery. [Docs. 1, 15].

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As the Supreme Court has observed, 'this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)) (emphasis in original).

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), cert. denied, 513 U.S. 814 (1994). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522. If this showing is made, the burden then shifts to the nonmoving party who must convince the Court that a triable issue does exist. Id. In considering the facts on a motion for summary judgment, the Court

will view the pleadings and material presented in the light most favorable to the nonmoving party. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986).

## III. FACTUAL BACKGROUND

Viewing the forecast of evidence in the light most favorable to the Plaintiff, the following is a recitation of the relevant facts.

On March 17, 2017, the Plaintiff was driving east on SR19 out of Bryson City, North Carolina, on the way to meet a business associate. [Doc. 55-1: Plaintiff's Decl. at ¶ 6]. After turning onto Walker Woody Road, the Plaintiff saw a group of vehicles blocking the road several hundred feet ahead of him. [Id.] Hoping to catch up to his business associate, who was on his way to Sylva, North Carolina, the Plaintiff executed a three-point turn and returned to SR19 to avoid the blockage. [Id.].

Unbeknownst to the Plaintiff, the line of vehicles was a result of a seatbelt enforcement checking station where every vehicle was being stopped by law enforcement officers. [Doc. 52-2: Defendant's Decl. at ¶¶ 5-7]. Once vehicles were stopped, officers would ask each driver for their driver's license and registration. [Id. at ¶ 7]. After the Plaintiff had traveled about a tenth of a mile back toward SR19, an unmarked law enforcement vehicle approached the Plaintiff from behind with its lights and sirens

engaged. [Doc. 55-1: Plaintiff's Decl. at ¶ 8]. The Plaintiff did not immediately pull over, and passed a pawn shop, highway patrol station, church, another road, and pull-off while the law enforcement vehicle followed closely behind him. [Doc. 52-5: Plaintiff's Dep. at 14-17]. The Plaintiff continued to drive for a total of about 3.3 miles[1] before pulling into a tire shop; the law enforcement vehicle pulled in directly behind him. [Doc. 55-1: Plaintiff's Decl. at ¶¶ 8-11].

The Plaintiff stepped out of the vehicle and remained at the open door. [Id. at ¶ 11]. A law enforcement officer, later identified as Defendant Ammons, approached the Plaintiff and began to twist the Plaintiff's arm behind his back, yelling at him that he did not know "whether [the Plaintiff was] drunk, high on drugs, or [was] going to run." [Id. at ¶ 12]. The Plaintiff emphatically said to Defendant Ammons, "Let go of my arm, or you're going to injure it." [Id.]. Another vehicle approached and parked directly behind Defendant Ammons, and another law enforcement officer, later identified as Defendant Freeman, got out of the vehicle and started twisting the Plaintiff's

---

[1] While the Plaintiff's Declaration states the total distance traveled was 3.3 miles, both the Plaintiff's and the Defendant's briefs state the total distance as approximately 0.3 to 0.4 miles. [Docs. 52 at 6, 55 at 3]. Because it is undisputed that the Plaintiff had multiple opportunities to pull over before he did, this discrepancy in the alleged distance travelled does not affect the analysis of the Plaintiff's claims.

5
Case 1:21-cv-00107-MR-WCM Document 70 Filed 11/17/23 Page 5 of 16

arms "from the rear with both of his hands." [Id. at ¶ 13]. The Plaintiff asked the Defendants why he was being arrested, but neither replied. [Id.].

At this point, the Plaintiff observed that Defendant Ammons was a North Carolina State Trooper, and that Defendant Freeman was a Bryson City Police Officer. [Id. at ¶ 14]. Defendant Ammons asked the Plaintiff if he lived in the area, to which the Plaintiff replied that he did, and Defendant Ammons then said, "I heard about you." [Id. at ¶ 15]. The Plaintiff repeatedly asked the Defendants what they meant and why he was being searched and arrested. [Id.]. The Plaintiff also asked Defendant Ammons to loosen the handcuff on his left arm; Defendant Ammons replied, "It isn't supposed to be comfortable." [Id. at ¶ 19]. The Plaintiff again asked what Defendant Ammons had meant when he said he had heard about the Plaintiff. [Id.]. Defendant Ammons did not reply but told the Plaintiff that he was being charged with (1) resisting, obstructing, and delaying an officer of the law by not stopping at a checkpoint and producing his driver's license, and (2) failure to pull over for a law enforcement vehicle.[2] [Id. at ¶ 20]. Defendant Ammons

---

[2] The citation from the Plaintiff's arrest indicate that he was charged with "operat[ing] a motor vehicle on a street or highway by failing, upon the approach of a state highway patrol vehicle that was giving warning signal by appropriate light and siren, audible under normal conditions and stop the defendant's vehicle" in violation of N.C. Gen. Stat. 20-157(a) and "resist[ing], [delay[ing], and obstruct[ing] [Defendant] Ammons, a public officer holding the office of State Trooper, by failing to stop at a drivers license checkpoint and produce his drivers license" in violation of N.C. Gen. Stat. 14-223. [Doc. 52-7: Swain County Citation at 2].

then removed the Plaintiff's handcuffs; the Plaintiff again asked what he had meant when he said he had heard about him, and Defendant Ammons swept his right arm across the front of his body and said, "This," before getting in his vehicle and driving away. [Id. at ¶ 21].

Two days later, on March 19, 2017, the Plaintiff went to the emergency room at Swain Hospital because of lingering pain in his right shoulder. [Id. at ¶ 26]. The doctor on duty, Dr. Gerard Szytber, described his condition as "traumatic right rotator cuff and incomplete tear," and instructed the Plaintiff to wear a sling for a week and take pain medication. [Id.]. The injury interfered with the Plaintiff's work to the point where he had to hire temporary help to assist with lifting on his farm. [Id. at ¶ 27]. The pain persisted for several months after the incident. [Id.].

The charges against the Plaintiff never went to trial and were eventually dismissed in the Plaintiff's favor. [Doc. 52-11: Swain County Dismissal at 4].

## IV. DISCUSSION

### A. Federal § 1983 Claims

The Federal Civil Rights Act, 42 U.S.C. § 1983, imposes civil liability upon every person who, under color of law, deprives another of rights secured by the Constitution and laws of the United States. 42 U.S.C. § 1983.

To prevail on a § 1983 claim, the plaintiff has the burden of establishing (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed under color of state law. Austin v. Paramount Parks, Inc., 195 F.3d 715, 727 (4th Cir. 1999). By its terms, § 1983 "creates no substantive rights; it merely provides remedies for deprivation of rights established elsewhere." City of Okla. City v. Tuttle, 471 U.S. 808, 816 (1985) (citation omitted).

Because this Court has already dismissed the claims against the Defendant in his official capacity, the Plaintiff's constitutional claims will be analyzed only against the Defendant in his individual capacity.

### 1. Unreasonable Seizure Claim

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. Here, the Plaintiff asserts claims for unreasonable seizure on two different theories: false arrest and malicious prosecution. [Doc. 1: Compl. at ¶ 19].

An arrest is a seizure under the Fourth Amendment, and such a seizure is reasonable only if based on probable cause. Wilson v. Kittoe, 337 F.3d 392, 398 (4th Cir. 2003). Probable cause to justify an arrest means "facts and circumstances within the officer's knowledge that are sufficient to

warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). Whether probable cause exists must be determined "in the light of all of the surrounding circumstances." Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998).

The Fourth Circuit has previously held that "when law enforcement officers observe conduct suggesting that a driver is attempting to evade a police roadblock—such as unsafe or erratic driving or behavior indicating the driver is trying to hide from officers—police may take that behavior into account in determining whether there is reasonable suspicion to stop the vehicle and investigate the situation further." U.S. v. Smith, 396 F.3d 579, 585 (4th Cir. 2005). This type of behavior, when considering the totality of the circumstances, can contribute to a reasonable suspicion that a driver is engaged in criminal activity. See id.

The forecasted evidence shows that the Plaintiff turned around before reaching the officer checkpoint. [Doc. 55-1: Plaintiff's Decl. at ¶ 6]. Although the Plaintiff maintains that he did not see the checkpoint, and rather turned around to avoid the line of traffic, it is undisputed that the Defendant observed the Plaintiff turn around. [Id.]. The Defendant then followed the

Plaintiff in his car and activated his lights and sirens; the Plaintiff did not stop driving for over three miles. [Id. at ¶¶ 8-9]. While the Plaintiff argues that he was looking for a safe place to pull over, the uncontroverted evidence is that Plaintiff passed a number of places where he could have pulled over. As such, this delay in yielding to the lights and sirens reasonably added to the Defendant's suspicion that criminal activity was afoot, and in fact created probable cause that the Plaintiff was failing to pull over for a law enforcement vehicle in violation of state law. Therefore, even viewing the facts most favorably to the Plaintiff, the Defendant was justified in his seizure of the Plaintiff.

The Plaintiff also asserts a malicious prosecution claim. A malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort. Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000). To state a malicious prosecution claim, a plaintiff must allege that the defendant caused a seizure of the plaintiff pursuant to legal process, unsupported by probable cause, and the criminal proceedings terminated in the plaintiff's favor. Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012).

Although the charges against the Plaintiff were ultimately dismissed, the undisputed facts show that the Defendant had probable cause to believe

that the Plaintiff was both avoiding the checkpoint and evading an officer in violation of state law.  Therefore, both the arrest and the charges were supported by probable clause, and the Plaintiff cannot succeed on either a claim of false arrest or malicious prosecution.

### 2. Excessive Force Claim

"Whether an officer has used excessive force is judged by a standard of objective reasonableness." Clem v. Corbeau, 284 F.3d 543, 550 (4th Cir. 2002).  Moreover, "recognizing that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—we take care to consider the facts from the perspective of a reasonable officer on the scene and avoid judging the officer's conduct with the 20/20 vision of hindsight." Id. (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)); Stanton v. Elliott, 25 F.4th 227, 233 (4th Cir. 2022) ("In questioning the split-second decisions of police officers, we must avoid hindsight bias and try to place ourselves in the heat of the moment.").

Therefore, to determine whether excessive force exists, the Court must ask whether the Defendant's use of force was objectively reasonable considering the facts and circumstances confronting them, viewed in the light most favorable to the Plaintiff, without regard to the Defendant's underlying intent or motivation. Knibbs v. Momphard, 30 F.4th 200, 214 (4th Cir. 2022);

Hensley on behalf of N. Carolina v. Price, 876 F.3d 573, 582 (4th Cir. 2017). For this inquiry, Graham instructs courts to evaluate three factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. These factors are not "exclusive," and courts may identify other "objective circumstances potentially relevant to a determination of excessive force." Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015).

Here, the forecasted evidence shows that Defendant Ammons activated his lights and sirens and followed the Plaintiff in his car in attempt to get him to pull over. Once the Plaintiff finally stopped his vehicle, the Defendant approached the Plaintiff and twisted the Plaintiff's hands behind his back while hand cuffing him and placing him under arrest. Although the Plaintiff has alleged injuries to his arm and shoulder, the undisputed facts cannot support a finding of excessive force. "An efficient, lawful arrest of a resisting suspect that causes the suspect to suffer only de minimis injuries does not constitute excessive force." Pegg v. Herrnberger, 845 F.3d 112, 120 (4th Cir. 2017).

Indeed, given the Plaintiff's avoidance of the checkpoint and his apparent failure to yield to the pursuing officer, the Defendant had reason to

believe that the Plaintiff was resisting arrest or that he had could have had weapons or other dangerous materials in his car that he did not want the officers to discover. Viewing the totality of the circumstances at the time of the Plaintiff's arrest, the Defendant used objectively reasonable force to detain the Plaintiff and place him in handcuffs. As such, this claim cannot survive summary judgment.

### 3. Qualified Immunity

Qualified immunity "is an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The application of qualified immunity requires a two-part inquiry. First, the Court must determine "whether a constitutional right would have been violated on the facts alleged." Saucier v. Katz, 533 U.S. 194, 200 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009). Second, the Court must determine "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson, 555 U.S. at 232 (citation omitted).

"In performing this analysis, however, a court is not required to consider the above two steps in any particular order. A court may exercise its discretion to determine which of the two steps of the qualified immunity analysis 'should be addressed first in light of the circumstances in the

particular case at hand.'" Williams v. Ozmint, 716 F.3d 801, 805-06 (4th Cir. 2013) (quoting in part Pearson, 555 U.S. at 236). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

Because this Court has already determined that the undisputed forecast of evidence does not show the Plaintiff's constitutional rights were violated, the Court concludes that the Defendant is entitled to qualified immunity.[3]

## B. State Law Claims

A civil action for assault and battery is available under North Carolina law against one who uses force for the accomplishment of a legitimate purpose (such as a justifiable arrest), but only if the force used is excessive under the circumstances. Myrick v. Cooley, 371 S.E.2d 492, 496 (N.C. App. 1988). "The question of '[w]hether an officer has used excessive force is judged by a standard of objective reasonableness.'" Jordan v. Civil Service Bd., 570 S.E.2d 912, 918 (N.C. App. 2002) (quoting Clem, 284 F.3d at 550).

---

[3] Moreover, Plaintiff points to no authority clearly establishing that an arrestee who has resisted as Plaintiff did here must be free of the treatment Plaintiff received.

Here, the Plaintiff's assault and battery claims are resolved by this Court's previous determination in the context of the Plaintiff's § 1983 claims that the Defendant's use of force was objectively reasonable. In light of this determination, the assault and battery claim too must fail as a matter of law. See Myrick, 371 S.E.2d at 496.

In addition to their substantive issues, the Plaintiff's state tort law claims against the Defendant in his individual capacity are barred under the doctrine of public official immunity. Under North Carolina law, "[a] public official can only be held individually liable for damages when the conduct complained of is malicious, corrupt, or outside the scope of official authority." Hunter v. Transylvania Cty. Dep't of Soc. Servs., 207 N.C. App. 735, 737, 701 S.E.2d 344, 346 (2010). A public official acts "with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Grad v. Kaasa, 321 S.E.2d 888, 890 (1984); see also Bailey v. Kennedy, 349 F.3d 731, 742 (4th Cir. 2003). "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." Id.

Here, nothing in the forecasted evidence indicates that the Defendant acted maliciously, corruptly, or outside the scope of his official authority. On

the contrary, as previously discussed, the Defendant acted reasonably under the circumstances. Therefore, the Defendant is entitled to summary judgment with respect to the Plaintiff's state law claims for assault and battery.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant Aaron C. Ammons' Motion for Summary Judgment [Doc. 51] is **GRANTED**, and the Plaintiff's claims against Defendant Ammons are hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Signed: November 17, 2023

Martin Reidinger
Chief United States District Judge